The general nature of the case was this. The plaintiff was a merchant, residing and carrying on business in China, and William H. Fogg was a merchant, residing and carrying on business in New York. They entered into an agreement, not in writing, whereby the plaintiff was to ship merchandise from China, consigned to Fogg in New York, and Fogg was to receive the merchandise in New York, pay freight, premiums on fire, maritime and war insurance, and all other necessary expenses, and sell the merchandise, and remit one-half of the net proceeds to plaintiff, after charging against the *562 adventure all said expenses, including payment of said insurance, and retaining the other half of said net proceeds as his (Fogg’s) share. This mode of dealing, which had in it the elements of a partnership, was on some occasions varied by payment of fixed commissions to Fogg, instead of a half share of the net profits. Fogg from time to time rendered statements and accounts to plaintiff which were accepted by the plaintiff as correct. In January, 1865, these transactions wholly ceased, and, so far as appears, after that date the parties had no further dealings or correspondence with each other.
From time to time between February 2d, 1864, and February 8th, 1867, Fogg received various sums of money from said insurance companies as rebates of sums paid them by Fogg as premiums on said insurance on said merchandise consigned to Fogg by the plaintiff, of which receipt of said money Fogg never informed the plaintiff, and Fogg never remitted to plaintiff any part of said moneys so by him received, but retained the same in his possession. Fogg died in 1884. The latest of these receipts was February 8th, 1867. In 1887, the plaintiff for the first time became aware that such rebates had been made, and such moneys paid to Fogg on account of the same.
The plaintiff sues for his share of the moneys, so paid to Fogg, as being his money in the hands of Fogg, and which Fogg was, in equity and good conscience, bound to pay over to the plaintiff. The defence was the statute of limitations.
The Court below (O’G-okman, J.,) in considering this defence, wrote as follows : “ The defendant Fogg’s executors claim that the plaintiff’s action accrued at the time when these moneys on account of rebates were received by Fogg.
“ If they are right in that claim, the plaintiff’s action is barred under the statute of limitations, and *563 the direction of the judge to the jury to find a verdict in favor of the plaintiff was error, and the complaints should have been dismissed.
“ The plaintiff contends that his cause of action did not accrue until the demand made on the executors in September, 1888, in which case the verdict should stand.
“ It is not easy to gather from the numerous judicial decisions any rule of law on the subject, of general application. Each case must stand by itself, and in each, the question must be considered according to its own special facts.
“ In the case at bar, the Insurance Companies were justified in paying these rebates into the hands of Fogg. He had transacted all the business of these shipments in New York, under his own business name of Fogg Brothers, and he alone was known in New York, in relation to said shipments, and had the possession and apparent ownership of the merchandise. Fogg was justified in receiving the payments of such rebates from the Insurance Companies. As to the payments made to him before January, 1865, and while the agreement between ■ him and plaintiff was still in force, Fogg had an undoubted right to receive them. As to the payments made on account of these rebates, after the cessation of all dealings between the plaintiff and Fogg, Fogg was justified' in receiving the money, ‘ ex necessitate,’ because no one but he had any apparent right to receive it in New York, but by receiving it, he assumed the responsibility of transmitting to the plaintiff, with all reasonable speed, such share of the moneys as he knew was the property of the plaintiff, and he constituted himself the trustee of the plaintiff for that purpose and to that extent.
“ I do not see why, in order to constitute a cause of action, a demand should have been made by the plaintiff on Fogg, for plaintiff’s share of that money. *564 The object of such demand is to apprise the defendant of the duty he is required to perform, and give him an opportunity to perform it. But where a trustee is himself an actor in the transaction and has full knowledge of his duties, such notice and demand are not required. Abbott's Trial Evidence, 1883, page 234, 235 ; Brent v. Maryland, 18 Wall. 430, 434 ; Jessop v. Miller, 2 Abb. Ct. of App. Dec. 449 ; Stacy v. Graham, 14 N. Y. 497. The weight of authority seems to me to sustain that view of the question. Howard v. France, 43 N. Y. 593 ; Re Cole, 34 Hun, 320 ; Knapp v. Simon, 96 N. Y. 288, 294 ; Pierson v. McCurdy, 100 lb. 608 ; Price v. Mulford, 107 lb. 308. The provisions of the Code of Procedure in point in this case were the same as are found in the Code of Civil Procedure, §§ 380, 382. Section 410 of the ‘ Code of Civil Procedure ’ is new, and is not found in the ‘ Code of Procedure ’ which was in force at the time the moneys in rebate of premiums on insurance were paid into the hands of Fogg.
“ I have read and considered the authorities cited on behalf of the plaintiff on this subject.
“ In my opinion the weight of the argument is on the side of the defendant.
“ Looking at the question merely as one of mercantile ethics, it would seem unjust and improper that a merchant, receiving money, which he knew to belong to another, should be justified in retaining that money, in keeping secret the fact that he had received it, and had it in his possession—and that no legal obligation or responsibility on his part to the lawful owner of the money should accrue until formal demand has been made on him by the owner. In my opinion the obligation and cause of action accured at the moment the money was received. The result of these views is that the plaintiff’s cause of action against Fogg accrued in 1867, when the last of these rebates was paid into the hands of Fogg, *565 and the action is long since barred by lapse of time.
“As to the instances in which the rebates were paid into the hands of Fogg, while he received a fixed commission on the sales, instead of a share of the net profits, the plaintiff claims that Fogg was acting as a foreign factor. I see no reason to think that any other or different rule would prevail, if Fogg had been a factor or other agent. He would have had, no doubt, a lien on the money for any sums justly due to him for commissions or otherwise, but the money in nowise belonged to him, but, except as to that lien, it belonged to the plaintiff absolutely. Baker v. Nat’l Ex. Bank, 100 N. Y. 33. No commissions were in fact due and unpaid, and the factor or agent held the moneys on an implied trust for his principal, to whom they all belonged. Boss v. Curtis, 30 Barb. 240. A factor does not receive the proceeds of sales of the property of his principal as his own money, but as the money of his principal. Edioards on Factors, § 92.
“ But in the casé at bar, the moneys received by Fogg from the insurance companies was not any part of the proceeds of the sales, which he had effected, and on which he had a lien. It was money which, although arising indirectly out of the transaction in which he may have acted as factor, was unexpected and fortuitous, and derived out of an extraordinary rebate of moneys paid after the factor had been completely paid for his services. As in other cases the money was paid into the hands of the factor, because there was no one else in New York who had an apparent right to receive it, and when paid it was in his hands the property of the plaintiff, and the factor was charged with the implied trust to remit it to the true owner with all reasonable dispatch.
“ In my opinion Fogg did not, as to the receipt of *566 these moneys, act in the capacity of 6 foreign factor,’ bnt only as trustee for the plaintiff, and under the obligation of remitting the money to the plaintiff when received. No demand was necessary to constitute a cause of action against Fogg. The money was not his money, but the money of the plaintiff, and the plaintiff had a cause of action against Fogg without any demand.
“ It may be that these views of this action tend to work a hardship on the plaintiff and defeat a claim which is in itself meritorious. But that is the result of the inherent defect of legislation which fails to anticipate and provide for all the various new conditions which present themselves in the ever varying transactions of men.
“ There must be a new trial, with costs to abide the event of the action.”
Per Curiam.
Order affirmed on opinion of the court below.